**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 95-20244

IN RE:  M.J. BEEBE, ET AL.,

Petitioners.

Petition for Writ of Mandamus to the United States
District Court for the Southern District of Texas
(No. CA-H-89-3174)

(May 15, 1995)

Before DUHÉ, WIENER, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioners M.J. Beebe, et al. petition for writ of mandamus requesting vacatur of an order staying proceedings in a case styled <u>Beebe v. Atlantic Financial Federal</u> (<u>Beebe</u>),[1] pending the trial of an older and larger companion case styled <u>Cogan v. Triad American Energy</u> (<u>Cogan</u>).[2]  We required the defendants in <u>Beebe</u> (Respondents) to respond to Petitioners' petition, and invited the district court to do so.  Only Respondents responded.  Finding the petition to have merit, we grant the petition for mandamus as more particularly

---

[*]Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the Court has determined that this opinion should not be published.

[1]No. C.A. H-89-3174 (S.D. Tex.).

[2]No. C.A. H-87-4106 (S.D. Tex.)

specified below, and remand to the district court for proceedings consistent with this order.

I

FACTS AND PROCEEDINGS

The Petitioners are plaintiffs in <u>Beebe</u>. They, like the plaintiffs in <u>Cogan</u>, are among numerous investors in a series of limited partnerships organized by Triad American Energy for the purpose of developing wind turbine parks in Southern California. Plaintiffs in both cases allege that the limited partnerships were actually a classic Ponzi scheme constituting securities fraud, and have named as defendants many of the same parties.

<u>Cogan</u> was filed in 1987 and removed to federal court in 1988. Several other groups of investors, including Petitioners, subsequently filed suit in several states. All of those related cases were later consolidated pursuant to the Rules Governing Multi-District Litigation (MDL). During the consolidated pre-trial proceedings, Petitioners coordinated and participated in discovery with other plaintiffs. In 1992, the consolidated pre-trial proceedings in the MDL ended and all cases were remanded to their original courts, as a result of which <u>Cogan</u> and <u>Beebe</u> were transferred to the same judge of the United States District Court for the Southern District of Texas.

Following that remand, the district court held a status conference in <u>Cogan</u>, during which, Respondents contend, the parties discussed the identity of issues and claims in <u>Cogan</u> and <u>Beebe</u>. Shortly thereafter, on December 16, 1992, the district court sua

2

sponte stayed <u>Beebe</u> "until after the trial of <u>Cogan</u>."  The court did not articulate reasons for entering the stay.

On January 7, 1993, Petitioners filed a motion to vacate the stay, which the district court denied.  The court did not articulate reasons for the denial.  About a month later, Petitioners filed a motion asking the court to rehear a motion to vacate the stay.  The district court denied the motion.  The court did not articulate reasons for its denial, but it did clarify that the stay did not prohibit the parties from negotiating a settlement, filing motions related to a settlement, or mediating the dispute.

On September 30, 1993, Petitioners filed a second motion to lift the stay, pointing out that nine months had passed since the imposition of the order and that "the end is nowhere in sight": "No trial date is expected in the <u>Cogan</u> case for the foreseeable future."  Not surprisingly, Respondents opposed the motion, stating conclusionally that the court was conserving judicial resources and decreasing the cost of litigation for all parties by maintaining the stay until after the trial of <u>Cogan</u>.  The district court has never responded to the Petitioners' motion.

On December 5, 1994, Petitioners filed a Motion for Status Conference, asking the district court to schedule a status conference pursuant to Federal Rules of Civil Procedure Rule 16. They requested that the stay be lifted so that they could complete discovery and, if at all possible, that the district court schedule a trial date.  Respondents opposed this motion too, contending that

3

Petitioners had failed to show "good cause" why the district court should abandon its earlier ruling. On December 27, 1994, the district court denied the Petitioners' Motion for Status Conference. The court did not articulate reasons for the denial.

Petitioners filed a Petition for Writ of Mandamus on April 11, 1995, by which time Beebe had been stayed in the district court for well over two years, during which period no explanation had been articulated by the district court. Although dispositive motions were filed by both parties in Cogan more than a year ago, the district court has not ruled on those motions; neither has the district court scheduled a trial date for Cogan. Respondents oppose mandamus, stating (without record citation) that "the district court has informed the parties" that decisions on the dispositive motions in Cogan are forthcoming, and that the stay is continuing to save the court and all litigants substantial resources.

II

DISCUSSION

A. MANDAMUS

"[M]andamus is an extraordinary remedy, not to be granted lightly."[3] As we recently observed, however, when mandamus is sought to lift a stay of a trial court proceeding, as here, the circumstances "are less foreboding than the usual case," as the district court "can lay claim to no greater familiarity with the matter than can be gleaned from the pleadings" and "there is no

_____

[3]In re Ramu Corp., 903 F.2d 312, 317 (5th Cir. 1990).

4

interruption with ongoing proceedings below."[4]

B.    STANDARD OF REVIEW

We review the district court's decision to impose a stay only to determine whether there has been an abuse of discretion.[5]  We note at the outset, however, that our review of the district court's judgment in this case is severely hampered by that court's complete silence regarding why it imposed the stay in the first instance and, more important to the instant petition, why it continues to maintain that stay))two and one-half years later and no end in sight.

C.    DISTRICT COURT'S POWER TO CONTROL ITS DOCKET

We commence our review by canvassing the familiar landscape of the limits of a district court's authority to control its own docket.   In <u>Landis v. North American Co.</u>,[6] the Supreme Court recognized that incidental to a district court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" is "the power to stay proceedings."[7]  The Court noted that "how this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[8]  Thus, a district court has a "discretionary power to stay proceedings

---

[4]<u>Id.</u> at 318.

[5]<u>Id.</u>

[6]299 U.S. 248 (1936).

[7]<u>Id.</u> at 254.

[8]<u>Id.</u> at 254-55.

before it in the control of its docket and in the interests of justice,"[9] but this control is not "unbounded."[10]  With this guidance in mind, we consider the efficacy of the initial order imposing the stay; and whether, if initially justified, subsequent events have robbed that original judgment of it rationale.

1.  Original Imposition of the Stay

The Supreme Court has advised that a stay must be "so framed in its inception that its force will be spent within reasonable limits, so far as they are susceptible of prevision and description."[11]  There is nothing per se impermissible, however, about staying a lawsuit until after another related action has been tried.[12]

But "before granting a stay pending resolution of another case, the court must carefully consider the time reasonably expected for resolution of the `other case,' in light of the principle that `stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'"[13]  There is nothing in the record to indicate that before staying Beebe the district

---

[9]McKnight v. Blanchard, 667 F.2d 477, 479 (5th Cir. 1982); see In re Ramu Corp., 903 F.2d at 318 ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery.").

[10]Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983).

[11]Landis, 299 U.S. at 257.

[12]See, e.g., id. at 258.

[13]Wedgeworth, 706 F.2d at 545 (quoting McKnight, 667 F.2d at 479).

court actually considered how long it would take to try Cogan, although it appears from both parties' briefs that all believed that, at a minimum, dispositive rulings on pretrial motions were just around the corner and that a trial schedule would not be long behind. As time has tolled, however, neither belief has proven to be well founded.

In any event, we cannot conclude that the district court abused its discretion when it originally ordered the stay of Beebe until after the trial of Cogan. Although the stay may have interrupted Petitioners' discovery schedule, as they claim, Cogan is an older and larger case; it involves many similar issues and claims; and, at that time the stay was ordered, it appeared to be ready for trial. Ordering a stay under those circumstances was certainly not an abuse of discretion.

2. <u>Maintaining the Stay</u>

But the Supreme Court has also stated that courts should reconsider the fairness of a stay order in light of "present day realities."[14] The realities today))almost two and one-half years after the Beebe stay was initially imposed))are that in Cogan the district court still has not ruled on several dispositive motions (filed more than a year ago), much less set a trial date. To ascertain whether the district court has now abused its broad discretion in this area, we must weigh the competing interests, as they now exist, and determine whether the equities continue to

---

[14]<u>Landis</u>, 299 U.S. at 258.

7

justify a stay.[15]  This typically difficult task is made more difficult in the instant situation because, like Petitioners, we have not been favored with the district court's reasoning for continuing to maintain the stay in full force and effect.

Petitioners argue that the current equities require that the stay be lifted.  They note that many things have happened since the stay was first imposed, e.g., one defendant bank has filed for bankruptcy and certain partnership assets have been sold to third parties, thus reducing Petitioners' ability to recover damages in the event that they are ultimately successful in their lawsuit.  Furthermore, Petitioners express the fear that relevant partnership business records may well be lost and that the memories of key witnesses may well be fading.  We find these concerns to be reasonable and the equities weighty.

Although the district court sua sponte stayed Beebe until after Cogan is tried, Respondents now fully embrace that decision and have become its foremost (not to mention only) overt advocate on appeal.  As such, they have essentially become the suppliant for maintaining the stay, and "[a] party who seeks a stay bears the burden of justifying a delay tagged to another legal proceeding:

> [T]he suppliant . . . must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[16]

---

[15]See Wedgeworth, 706 F.2d at 545.

[16]Id. (quoting Landis, 299 U.S. at 255).

8

Essentially, the only hardship that Respondents claim is that if the stay is lifted before <u>Cogan</u> is decided they <u>could</u> incur unnecessary litigation expenses. In particular, they argue, it would be a waste of Respondents' resources to respond to Petitioners' discovery requests regarding issues or matters that the district court <u>may</u> later deem to have no merit in <u>Cogan</u>. (Of course, every defendant in a lawsuit faces this "inequity.") In addition, the Respondents note that the district court too is preserving resources by handling the cases seriatim, as the resolution of issues in <u>Cogan</u> will pare down the scope of the issues, and thus the litigation, in <u>Beebe</u>.

Although we are mindful of the increased cost of litigation to parties, the congested dockets of our federal district courts, and the scarcity of judicial resources, we nonetheless cannot conclude that a careful weighing of the equities still warrants maintaining))in its entirety))the comprehensive stay ordered by the district court almost two and one-half years ago.

We find particularly compelling Petitioners' concerns regarding the need to complete discovery. Respondents attempt to minimize this concern by essentially arguing that Petitioners overstate the need to conduct discovery: "[V]irtually all fact discovery was completed in the <u>Beebe</u> case (with the exception of the completion of the depositions of [Petitioners])" at the time the stay was entered. But we find this position disingenuous in light of Respondents' Opposition to Plaintiffs' Motion for Status Conference, in which those same Respondents claimed that "discovery

9

was far from complete" at the time the stay was entered.  But if little additional discovery is necessary, as Respondents now claim on appeal, what's their beef?  The cost of complying with such minimal discovery requests should be relatively small, imposing a minimal hardship on the Respondents.  On the other hand, a continued delay in permitting Petitioners to acquire documents and depose witnesses necessary to the eventual pursuit of their cause of action could well lead permanently to the loss of those documents or those recollections, thereby forever impeding the search for truth in this litigation.

We also believe that Respondents overstate the extent of judicial resources to be saved by maintaining this stay.  Foreclosing all discovery does not conserve significant judicial resources; typically, it is the parties, not the district court, who are the active participants in that pre-trial stage of the litigation process.  Expenditure of judicial resources accelerate most briskly as trial nears; and as Cogan instructs, even if the instant litigation continued unabated from this day forward, it will probably be a long time before these parties have their day in court.

Neither is this case one involving issues of "extraordinary public moment."  In such cases, the Supreme Court has noted, "the individuals may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."[17]

---

[17]Landis, 299 U.S. at 256.

Returning to applicable legal parlance, we conclude that Petitioners have established that the current stay is of indefinite duration and is immoderate. The stay is of indefinite duration as evidenced by the passage of almost two and one-half years; and we agree with Petitioners that "the end is nowhere in sight." The stay is immoderate as the equities no longer warrant such a pervasive halt to the Beebe proceedings. In fact, at this point the continued proscription on all discovery is almost certainly having an adverse, rather than salutary, effect on the litigation. Most troubling is the very real potential that valuable information regarding important issues in the case may be lost forever should this stay be maintained as to discovery. Consequently, the continued imposition of the stay imposes the "greater and the less remediable burden" on Petitioners.[18] As our late lamented colleague, Judge Goldberg, once wrote:

> We must always have great respect for a trial court's judicial discretion in the control of its docket, but we cannot abdicate our roles in monitoring that discretion to prevent the ossification of rights which attends inordinate delay.[19]

III

CONCLUSION

We conclude that the equities can no longer justify the comprehensive order staying Beebe, and that, at a minimum, the district court must permit discovery to proceed expeditiously and

---

[18]See Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran), 710 F.2d 199, 203 (5th Cir. 1983).

[19]Hines v. D'Artois, 531 F.2d 726, 737 (5th Cir. 1976).

11

unimpeded.  But due to the Sphinxian silence of the district court, the record is devoid of facts and reasons from which to ascertain whether the equities might warrant a stay of more modest scope.[20]

We therefore grant Petitioners' request for writ of mandamus and instruct the district court forthwith to vacate its order staying Beebe until after the trial of Cogan.  We also remand this matter to the district court for the limited purpose of conducting an expedited hearing to determine anew whether the equities might warrant the imposition of a new stay of more limited extent in light of "present day realities."  In no event, however, may any new stay prevent or impede any party's conduct of appropriate discovery in Beebe.  In considering whether a stay of limited proportion may be warranted, we instruct the district court to weigh carefully, on the record, the competing equities as described by the Supreme Court in Landis.  Failure of the court to conduct and complete the consideration of a new, more limited stay in this matter within ninety (90) days following the entry of this Order shall, ipso facto, preclude the reimposition of any stay in the subject proceedings.

Petitioners' petition for writ of mandamus is GRANTED, and the matter is REMANDED for proceedings consistent with this Order.

---

[20]We do not know, for example, either the current posture of Cogan, or the current posture of the district court's docket, and recognize that the district court is in a better position than we to judge such matters.